UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

C.C. individually and on behalf of D.A., a child with a disability,

                    Plaintiff,

    -v-

NEW YORK CITY DEPARTMENT OF EDUCATION,
                    Defendant.

CIVIL ACTION NO.: 20 Civ. 1915 (GBD) (SLC)

**OPINION AND ORDER**

**SARAH L. CAVE**, United States Magistrate Judge.

## I. INTRODUCTION

In this action for the enforcement of rights and for attorneys' fees under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400, et seq. (the "IDEA"), before the Court is Plaintiff C.C.'s motion pursuant to Federal Rule of Civil Procedure 65 seeking a preliminary injunction directing Defendant New York City Department of Education ("DOE") to comply with the May 13, 2019 order of an Impartial Hearing Officer ("IHO"), concerning the education of her child, D.A. (the "IHO Order").  (ECF No. 46 (the "Motion")).  Plaintiff seeks an order "direct[ing] [DOE] to immediately reauthorize and fund D.A.'s tutoring services" until at least August 31, 2022 — one year beyond the expiration date set in the IHO Order — due to delays and interruptions purportedly caused by the DOE that have limited D.A.'s access to tutoring.  (ECF Nos. 47 at 5, 17, 20; 46 at 2; 48 ¶ 78).[1]  Plaintiff's Motion does not seek additional compensatory educational services or tutoring.  (ECF No. 65 at 24:21–25:7).

---

[1] Plaintiff's Memorandum of Law states that she seeks an extension of the deadline "until a date no sooner than November 30, 2022, subject to—if awarded as a result of Plaintiff's forthcoming summary judgment motion—alteration by the Court." (ECF No. 47 at 5–6).  In contrast, August 31, 2022 is the date she

In support of her Motion, Plaintiff filed a Memorandum of Law ("Plaintiff's Memorandum" (ECF No. 47)) and a Declaration of Plaintiff's counsel, Benjamin M. Kopp, Esq. ("Kopp Declaration"), attaching several exhibits, including the IHO Order, the January 28, 2021 Neuropsychological Evaluation of D.A. (the "Evaluation"), an affidavit from Plaintiff ("Plaintiff's Affidavit"), emails between the parties and educational service providers, and invoices reflecting bills for educational services rendered by provider Kid Success, Inc. ("Kid Success").  (ECF Nos. 48, 48-1 – 48-8).

DOE opposed the Motion (the "Opposition" (ECF No. 51)), accompanied by the Declaration of Timothy Nelson, a Legal Advisor to the DOE's Impartial Hearing Order Implementation Unit ("IHOIU").  (ECF No. 52 (the "Nelson Declaration")).  Plaintiff replied to the Opposition (the "Reply" (ECF No. 53)), and the Motion is now ripe.

For the reasons set forth below, the Motion is DENIED.

## II. BACKGROUND

### A. Factual Background

On June 22, 2018, Plaintiff initiated a due process hearing on behalf of D.A., alleging that D.A. had been denied a free appropriate public education ("FAPE") at Public School 159 for the three school terms 2016–17, 2017–18 and 2018–19.  (ECF Nos. 4 ¶ 8; 48-3 at 3, 20).  On May 6, 2019, the IHO held a due process hearing, and on May 13, 2019, issued the IHO Order, as described below.  (ECF No. 4 ¶¶ 10–11).

---

specified in the accompanying Proposed Order to Show Cause, and in the Kopp Declaration.  (ECF No. 46 at 2; ECF No. 48 ¶ 78).  During an August 9, 2021 conference, Plaintiff's counsel confirmed that the requested extension date "should be August 31 of 2022."  (ECF No. 57 at 6: 5–9).  Accordingly, the Court assumes that the November 30, 2022 date requested in Plaintiff's Memorandum of Law was an error.

1.  **The IHO Order**

At the time of the IHO hearing, D.A. was a seven-year-old child who functioned at a pre-kindergarten level despite being of average intelligence, and was diagnosed with "a specific reading disability (dyslexia), with a writing disorder, a math disorder, as well as an auditory processing disorder and ADHA."  (ECF No. 48-1 at 1).  As redress, the IHO ordered the following:

> [D.A. should be] place[d] in an intensive language-based program utilizing an integrated multi-sensory methodology to address [D.A.'s] continuing significant language-related delays, and . . . the [DOE] [must] refer [D.A.] to its CBST [Central Based Support Team] and effectuate such a placement.
> …
> [D.A.] is entitled to a bank of additional compensatory 1:1 tutoring services in an effort to make her whole for the three years of deprivation . . . [D.A.] could benefit from [two] hours daily of [afterschool] tutoring services while school is in session, and from [four] hours daily in weeks when it is not.  For the period between now and August 31, 2020, I conclude that this totals a bank of 1,280 hours of 1:1 tutoring services . . . <u>The bank is to be drawn upon by the family at such times and in such locations as they deem practicable, and to be used no later than August 31, 2021</u>.
>
> [This] remedy . . . is meant to constitute an effort, taken together with the appropriate NPS program here ordered, towards meeting the <u>Reid</u>[2] standard detailed above.  But the law is meant to be dynamic and responsive to [D.A.'s] evolving educational needs, and the effort I make here is to define the maximum compensatory service that may effectively be delivered during the forthcoming months, through August, 2020, not to predict an indeterminate future . . . .
>
> For this reason, I further Order the [DOE] to fund a neuropsychological update towards the end of the 2019-20 school year to determine whether the program and services here ordered have been effective and whether the <u>Reid</u> standard has been met and [D.A.] is where she would have been had FAPE been available during the three years covered here.  My determination that the [DOE] failed to provide FAPE for those three years is made here as a timely final determination on the merits and is <u>res judicata</u> for any future proceeding between the parties should additional <u>Reid</u>-defined remedy for these three years of deprivation be deemed needed by [D.A.'s] family and subsequently litigated.

(ECF No. 48-1 at 23–24) (emphasis added).

---

[2] <u>Reid ex rel. Reid v. District of Columbia</u>, 401 F.3d 516, 526 (D.C. Cir. 2005)

In accordance with the recommendation in the IHO Order that D.A. be placed in a state-approved non-public school, in September 2019, she was placed at the Hebrew Academy for Special Children in Woodmere, Long Island (the "Hebrew Academy").  (ECF No. 48 ¶ 29; ECF No. 48-2 ¶ 11).

### 2.  The Evaluation

On January 28, 2021, Joan Hittleman, Ph.D., of the Children's Mental Health Center, performed the Evaluation.  (ECF No. 48-3 at 26).  At that time, D.A. was nine years old and attended fourth grade at the Hebrew Academy.  (Id. at 3, 20).  Dr. Hittleman noted that the Hebrew Academy closed in March 2020 due to the coronavirus pandemic, after which D.A. received online instruction at home as well as six hours of weekly tutoring.  (Id. at 20).   Dr. Hittleman concluded that D.A.'s cognitive and language abilities were "more impaired and further behind age level expectation in 2021 than . . . in 2018 because she did not have the appropriate academic supports[.]"  (Id. at 24).

Dr. Hittleman diagnosed D.A. with several disorders, at varying degrees of severity, including:  (i) moderate attention-deficit hyperactivity disorder, (ii) mild language disorder, (iii) moderate auditory processing disorder, (iv) moderate phonological disorder, (v) severe dyslexia, (vi) severe disorder of written expression, (vii) severe mathematics disorder, and (viii) mild adjustment disorder with anxiety.  (ECF No. 48-3 at 25).   Among Dr. Hittleman's recommendations were that D.A. be placed in a "small, structured, quiet language-based classroom . . . in a [n]on Public School, for a 12[-]month school year" with staff experienced in caring for a child with her disorders, and that she receive one-on-one tutoring for fourteen hours per week.  (Id. 25–26).

### 3.  Implementation of the IHO Order & Ordered Tutoring

The parties dispute the process by which the IHO Order was implemented.  Plaintiff alleges that implementation was frustrated by DOE's dereliction of the responsibilities imposed by the IHO Order.  DOE maintains that D.A. was automatically eligible for tutoring following the IHO Order, but that Plaintiff failed to initiate the tutoring process for nearly six months.

### a.  Plaintiff's Description

As set forth in Plaintiff's Affidavit and the Kopp Declaration, Plaintiff contends that the DOE did not contact her, either directly or through counsel, to implement the tutoring mandated by the IHO Order.  (ECF Nos. 48 ¶ 29; 48-2 ¶ 12).  On November 6, 2019, "after five months without communication from [DOE] concerning tutoring," Plaintiff's counsel "informed [the DOE's] [IHOIU] of her intent to have Kid Success [] provide the tutoring services ordered in [the IHO Order], contingent upon [DOE's] payment for the services[.]"  (ECF No. 48 ¶ 30; see ECF Nos. 48-2 ¶ 13; 48-7 at 5–6).  Kid Success "ultimately agreed" in November 2019 — the same month Plaintiff's counsel first contacted DOE to designate a tutor — to "take on some minor risk" associated with tutoring D.A. and then invoicing DOE for these services.  (ECF No. 48 ¶ 31).[3]

Beginning in November 2019, Plaintiff began signing Vendor Forms "for Kid Success [] to provide [to DOE]" reflecting the hours of tutoring D.A. used each month.  (See ECF No. 48 ¶ 33) (citing ECF No. 48-8 at 1)).  The Vendor Forms bear the letterhead of the DOE's IHOIU Division of

---

[3] For this proposition, the Kopp Declaration cites to two assertions in Plaintiff's Affidavit: (i) "[a]fter several months without communication about tutoring had passed following the [IHO Order], in November 2019, my counsel worked with Kid Success [] to start some provisional services with the hope that the DOE would eventually authorize Kid Success []" (ECF No. 48-2 ¶ 13); and (ii) "[a]t the end of each month, Kid Success [] brought me a 'Vendor Monthly Service Invoice Form' ["Vendor Form"] with the DOE's logo in the upper left-hand corner, for me to review and confirm the hours D.A. received for that month."  (Id. ¶ 14).

Specialized Instruction and Student Support, and state that they are "relied upon by the DOE to make payment[.]"  (ECF No. 48-8 at 1–26).

On April 21, 2020, the DOE sent an email stating that it had authorized tutoring services for D.A. provided by Kid Success, "backdated" to May 1, 2019, (the "DOE Confirmation Email") for the time period May 1, 2019 to April 30, 2021, and noting that "the hours were 'to be used no later than August 31, 2021[,]'" the deadline in the IHO Order.  (ECF No. 48 ¶ 45) (quoting ECF No. 48-4 at 1)).  It is undisputed that, in the months before the DOE Confirmation Email, Kid Success provided D.A. 21 hours of tutoring:  three hours in November 2019, four hours in December 2019, three hours in January 2020, two hours in February 2020, three hours in March 2020, and six hours between April 1 and April 20, 2020.  (ECF No. 48 ¶¶ 33, 35–36, 38, 41) (citing ECF No. 48-8 at 1–6)).  The DOE began paying the invoices in May 2020, consistent with the DOE Confirmation Email.  (See id. ¶ 46).

Plaintiff asserts that, on April 30, 2021, Kid Success' tutoring services were "cut off" because DOE did not renew or extend its authorization for tutoring, although the record is unclear whether Kid Success declined to continue rendering tutoring services in May 2021, or whether Plaintiff did not seek tutoring for D.A. at that time.  (ECF Nos. 48 ¶ 67; 48-2 ¶ 20).[4]  On June 3, 2021, DOE sent an email to Plaintiff's counsel (the "June 3 Email") following which Kid Success resumed services from that date until August 31, 2021.  (ECF No. 48 ¶ 67). The June 3 Email states, in relevant part:

---

[4] To support the assertion that services were cut off on April 30, 2021, the Kopp Declaration cites Plaintiff's statement in her Affidavit that the DOE "let [D.A.'s] tutoring services get cut off at the end of April 2021[.]" (ECF No. 48-2 ¶ 20).

> DOE will change the expiration date and can and will fund any remaining hours
> through the expiration date listed in the [IHO Order].  As [prior counsel] previously
> explained, the [DOE] can only authorize services for two[-]year blocks (the
> authorization was first put in place in May 2019, and thus initially could only
> extend through the end of April 2021).  Nothing has or will preclude DOE from
> processing invoices for services provided after 4/30/21.

(ECF No. 48-5 at 1).  Following the June 3 Email, Kid Success agreed to resume providing services

from that date until August 31, 2021.  (ECF No. 48 ¶ 67).  As such, Kid Success "did not provide

any services" to D.A. between May 2021 and June 3, 2021.  (ECF No. 47 at 9).

Plaintiff acknowledged that, although she was "trying to use the tutoring hours as quickly

as possible, it has been difficult to schedule a good time after school for D.A. because school

makes her so tired that she often falls asleep."  (ECF No. 48-2 ¶ 15).

### b.  DOE's Description

As set forth in the Nelson Declaration, the parties have 35 days to appeal an IHO Order.

(ECF No. 52 ¶ 5).  "If no appeal is taken, the [IHO Order] is implemented, pursuant to its terms,

and the student is automatically entitled to the program and services ordered therein."  (Id.)

Neither party appealed the IHO Order.  (See id. ¶ 8; ECF Nos. 48 ¶ 27; 48-2 ¶ 10).  Accordingly,

D.A. "was authorized to receive the services set forth in the [IHO Order], from May 13, 2019 up

to and including August 31, 2021[.]"  (ECF No. 52 ¶ 8).  In other words, "[w]hen a [IHO Order]

awards services, the services are 'authorized' by that decision itself, and so are 'authorized' as of

the date of that decision.  Here, [that date is] May 13, 2019."  (Id. ¶ 10).

A separate process exists by which education service providers are authorized to be paid

by the DOE.  (ECF No. 52 ¶¶ 10–12).  Under this process, the student's parents identify a provider,

after which the provider will be asked to submit a W9 form, unless the provider is known to the

DOE and already has a W9 on file.  (Id. ¶ 12).  Here, Kid Success was "well known to the DOE and

ha[d] a W9 on file . . . [as it] services hundreds of children pursuant to [IHO orders], and is fully familiar with and regularly follows the DOE's processes."  (Id. ¶ 14).  Thus, Kid Success did not need to submit a W9 for the services it was to provide to D.A.

The process for authorizing a provider for payment "has no bearing on a student['s] receipt or commencement of services," and "is not required for a student to begin receiving services from a vendor." (ECF No. 52 ¶¶ 12–13).  Thus, Kid Success began providing D.A. tutoring services "over 4 months before this administrative 'authorization' was completed."  (Id. ¶¶ 9, 13).[5]  Moreover, although the DOE Confirmation Email was dated April 21, 2020, (ECF No. 48-4), DOE did not delay D.A.'s receipt of tutoring services, because "Kid Success [] provided [tutoring] services for over four months without receipt of that confirmation email."  (ECF No. 52 ¶ 16).

With respect to the April 2021 deadline in the DOE Confirmation Email:

> [F]or any [IHO Order] which has an expiration date more than 2 years from the [IHO Order's] issuance, the case gets processed again with the remaining hours moved to the new payment authorization.  There is no communication needed on this piece.  Once an invoice is received for the services past the timeframe in the payment authorization e-mail, IHOIU automatically re-authorizes the case . . . and pays the invoices.

(ECF No. 52 ¶ 19).  According to the Nelson Declaration, "[t]he e-mail and payment authorization is an administrative task for payment purposes only, separate from [the] service provision which is authorized by the [IHO Order]."  (Id. ¶ 20).

---

[5] The Nelson Declaration states that Kid Success began providing tutoring services on December 2, 2019, but on the Court's review of the Vendor Forms, confirmed by the Kopp Declaration, Kid Success' tutoring of D.A. began several weeks before, on November 18, 2019.  (ECF No. 48-8 at 1; see ECF No. 48 ¶ 33).

Kid Success has been "routinely and regularly" submitting invoices to DOE for processing, and the most recent invoice, submitted to DOE on July 30, 2021, was for services provided to D.A. in June 2021.  (ECF No. 52 ¶ 17).[6]

**B.  Procedural Background**

On March 5, 2020, Plaintiff filed her Complaint.  (ECF No. 1).  An initial case management conference was originally scheduled for June 24, 2020, and was rescheduled seven times at the parties' request. (See ECF Nos. 7, 12, 15, 19, 32, 37, 41, 43).  On August 10, 2020, this action was referred to the undersigned for settlement.  (ECF No. 18).  The referral was amended on January 6, 2021 to include general pretrial supervision.  (ECF No. 31).

On April 12, 2021, after several adjournments at the parties' request, the Court held a settlement conference. (ECF No. 34; Minute Entry Apr. 12, 2021; see ECF Nos. 26, 27, 29).  On June 17, 2021, the Court held the Initial Conference.  (ECF No. 44).

On July 30, 2021, Plaintiff filed the Motion.  (ECF Nos. 46–48).  On August 6, 2021, DOE filed the Opposition, to which Plaintiff replied.  (ECF Nos. 51–53).  The Court held telephone conferences on August 9, 2021 and August 12, 2021 concerning the Motion.  (ECF Minute Entries Aug. 9, 2021; Aug. 12, 2021).  As of August 12, 2021, D.A. had used between 343.17–347.17 hours, leaving between 932.83–936.83 tutoring hours remaining.  (ECF No. 61 at 4:16–5:8).[7]

On August 16, 2021, the Court entered a Stipulation and Order, executed by all parties, by which DOE agreed to "authorize Kid Success [] to continue providing tutoring services awarded

---

[6] At a conference on September 21, 2021, DOE's counsel stated that DOE had not received any invoices pertaining to D.A.'s tutoring since August 31, 2021.  (ECF No. 65 at 17:4–10).

[7] The parties' calculations of the remaining tutoring hours diverged by four hours, which Plaintiff acknowledged was "not a large number at all."  (ECF No. 61 at 4:12–5:11).

under the [IHO Order], for an additional thirty (30) days beyond that stated in the [IHO Order]—
i.e., for the period September 1, 2021 through September 30, 2021[.]"  (ECF No. 55).

On September 21, 2021, the Court held a telephone conference with the parties concerning Plaintiff's motion to compel discovery responses from the DOE.  (ECF No. 56).  (See ECF No. 63).  During the conference, Plaintiff's counsel confirmed that the scope of the Motion is limited to the expiration date of the tutoring hours, and that in the Motion, Plaintiff does not seek an award of additional compensatory hours.  (ECF No. No. 65 at 24:21–25:7).

On September 30, 2021, the Court entered a second Stipulation and Order, executed by the parties, by which DOE agreed to authorize Kid Success to continue providing tutoring services awarded under the IHO Order for an additional thirty days, that is, through October 30, 2021. (ECF No. 68).

### III. DISCUSSION

#### A. Legal Standards

##### 1. The IDEA

The IDEA "requires States receiving federal funding to make a 'free appropriate public education' ("FAPE") available to all children with disabilities residing in the State." L.V. v. N.Y.C. Dep't of Educ., No. 03 Civ. 9917 (LAP), 2021 WL 663718, at *1 (S.D.N.Y. Feb. 18, 2021) (quoting Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 232 (2009).  FAPE is defined as "special education and related services" that:

(A) have been provided at public expense, under public supervision and direction, and without charge;
(B) meet the standards of the state educational agency;
(C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and

(D) are provided in conformity with the individualized education program ["IEP"] required under [the IDEA].

V.D. v. State, 403 F. Supp. 3d 76, 83 (E.D.N.Y. 2019) (quoting 20 U.S.C. § 1401(9)).  The DOE is responsible for providing a FAPE to all New York City students with disabilities. See L.V., 2021 WL 663718, at *2 (citing 20 U.S.C. § 1412(a)(1)(A); M.H. v. N.Y.C. Dep't of Educ., 685 F.3d 217, 225 n.4 (2d Cir. 2012)).  Under the IDEA, the "primary mechanism" for ensuring children receive a FAPE is "the requirement that educators collaborate with parents to devise IEPs for disabled children[,]" which should provide for the services a student should receive, as well as the frequency, location and duration of those services.  SJB ex rel. Berkhout v. N.Y.C. Dep't of Educ., No. 03 Civ. 6653 (NRB), 2004 WL 1586500, at *3 (S.D.N.Y. July 14, 2004) (citing 20 U.S.C. § 1414(d)); see M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ., 725 F.3d 131, 135 (2d Cir. 2013) (explaining that an IEP "describes the specially designed instruction and services that will enable the child to meet stated educational objectives and is reasonably calculated to give educational benefits to the child." [quotations omitted]).  Parents who are dissatisfied with an IEP may seek review by an IHO, and that decision, in turn is reviewable by a state review officer ("SRO").  L.V., 2021 WL 663718, at *2 (citing N.Y. EDUC. LAW §§ 4404(1)–(2)).  An administrative order that is not appealed is "final," and may be reviewed in state or federal court.  Id. (citing 20 U.S.C. § 1415(i); N.Y. EDUC. LAW § 4404(3)).

An order that is not appealed is "'final' and DOE's only lawful course of action is to implement [it]."  L.V., 2021 WL 663718, at *5.  "Until DOE implements an Order—that is, opens its checkbook—families and schools are left to front the cost, a financial burden that many of them cannot bear."  Id. at *3.  A plaintiff may bring a claim in federal court "to enforce [her] IDEA claim under [42 U.S.C.] § 1983, under which [this Court] ha[s] subject matter jurisdiction to

11

enforce favorable administrative decisions rendered under the . . . IDEA." Rutherford v. Fla. Union Free Sch. Dist., No. 16 Civ. 9778 (KMK), 2019 WL 1437823, at *25 (S.D.N.Y. Mar. 29, 2019) (quoting A.T. v. N.Y. State Educ. Dep't, No. 98 Civ. 4166 (JG), 1998 WL 765371, at *7 (E.D.N.Y. Aug. 4, 1998)).

### 2. **Preliminary injunction**

A preliminary injunction is "an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). "To obtain a preliminary injunction, the movant must show 'a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in the party's favor, and that an injunction is in the public interest.'" Y.S. ex rel. Y.F. v. N.Y.C. Dep't of Educ., No. 21 Civ. 711 (MKV), 2021 WL 1164571, at *3 (S.D.N.Y. Mar. 26, 2021) (quoting Am. Civ. Liberties Union v. Clapper, 804 F.3d 617, 622 (2d Cir. 2015)); see N. Am. Soccer League, LLC, v. U.S. Soccer Fed., Inc., 883 F.3d 32, 37 (2d Cir. 2018) (describing the standard as requiring: "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest.").

If the injunction would modify the status quo, then the moving party must "meet a heightened legal standard by showing 'a clear or substantial likelihood of success on the merits.'" N. Am. Soccer League, 883 F.3d at 36–37 (quoting N.Y. Civ. Liberties Union v. N.Y.C. Transit Auth., 684 F.3d 286, 294 (2d Cir. 2012)).

To establish irreparable harm, a plaintiff "must demonstrate 'an injury that is neither remote nor speculative, but actual and imminent.'" A.T., 1998 WL 765371, at *10 (quoting Tucker

Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989)).  "A showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" New York v. U.S. Dep't of Educ., 477 F. Supp. 3d 279, 293–94 (S.D.N.Y. 2020) (quoting Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009).

It is unnecessary to proceed through the entire preliminary injunction analysis after the Court finds that a necessary element is not met.  If a party moving for a preliminary injunction cannot establish irreparable harm, there is "no need" for the court to consider that party's likelihood of success on the merits, and the application may be denied.  Peck v. Montefiore Med. Ctr., 987 F. Supp. 2d 405, 413 (S.D.N.Y. 2013).  Similarly, where the court finds there is not a likelihood of success on the merits of the claim, it is "not necessary" to consider irreparable harm, the balance of the equities or the public interest in granting the injunction.  Doe v. New York Univ., No. 21 Civ. 2199 (SHS), 2021 WL 1662532, at *10 n.3 (S.D.N.Y. Apr. 28, 2021).

To demonstrate a likelihood of success on the merits, a plaintiff is "not required to show that success on [her] complaint is an absolute certainty, but rather that the probability of success is better than fifty percent." V.D., 403 F. Supp. 3d at 87 (quotation and citation omitted).

With respect to the balance of equities, "plaintiffs must demonstrate that the harm they would suffer absent the relief sought is substantially greater than the harm the defendants would suffer if the injunction were granted."  New York v. U.S. Dep't of Educ., 477 F. Supp. 3d at 305 (quoting Greylock Glob. Opportunity Master Fund Ltd. v. Province of Mendoza, No. 04 Civ. 7643 (HB), 2004 WL 2290900, at *4 (S.D.N.Y. Oct. 12, 2004).

B. **The Parties' Arguments**

1. **Plaintiff**

Plaintiff argues the DOE bears responsibility for the fact that D.A. has not been able to use all 1280 hours of tutoring mandated by the IHO Order, and that an order directing DOE to reauthorize and fund tutoring until August 2022 is necessary to halt D.A.'s educational regression. (ECF No. 47).

Specifically, Plaintiff asserts that DOE "is the direct cause of the absence of tutoring" for seven months: from May 13, 2019 through November 13, 2019, and the month of May 2021. (ECF No. 48 ¶ 73).

Plaintiff argues that here the IDEA's pendency or "stay-put" provision triggers her right to an automatic injunction to maintain D.A.'s educational status quo "during the pendency of an IEP dispute[.]" (ECF No. 47 at 13) (quoting Ventura de Paulino v. N.Y.C. Dep't of Educ., 959 F.3d 519, 531 (2d Cir. 2020) and citing L.A. v. N.Y.C. Dep't of Educ., No. 20 Civ. 5616 (PAC), 2020 WL 5202108, at *2 (S.D.N.Y. Sept. 1, 2020)).[8]

---

[8] Under the IDEA's "stay put" provision, "[e]xcept as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed." 20 U.S.C. § 1415(j).

Plaintiff incorrectly asserts that the IDEA's stay-put provision applies and requires the Court to defer to, and "credit heavily" the IHO Order in ruling on the Motion. (ECF No. 47 at 14). To the contrary, as the court stated in Y.S., in ruling on another application for a preliminary injunction seeking the implementation of a final order, the stay-put provision "is not the issue before the Court, [therefore] the traditional standard applies here." Y.S., 2021 WL 116457, at *3 n.2 (citing Ventura de Paulino, 959 F.3d at 529).

Accordingly, the Court will evaluate infra at § III.C.1–3 the likelihood of success on the merits, likelihood of irreparable harm, the balance of the equities and the public interest in granting the injunction. See Y.S., 2021 WL 1164571, at *3–5.

Plaintiff submits that, absent a court order, the delays in D.A.'s tutoring create a risk of irreparable harm from the termination of her tutoring.  (ECF No. 47 at 16).

In support of her request for an injunction, Plaintiff argues she will "easily succeed" on the merits of her Motion because DOE was legally obligated to implement the IHO Order, but instead caused interruptions in D.A.'s tutoring.  (ECF No. 47 at 16–18).  Finally, she argues that granting the Motion is in the public interest, because without the requested relief, D.A. will be "drag[ged] [] further back" and will ultimately require "far higher" compensatory education services.  (Id. at 20).

### 2.  DOE

DOE argues that the Motion should be denied because it has fully complied with its obligations under the IHO Order, the relief sought is not permitted by the IHO Order, and Plaintiff cannot meet her burden of showing her entitlement to a preliminary injunction.   (ECF No. 51).

First, DOE argues a preliminary injunction is unwarranted because Plaintiff cannot show irreparable harm, since D.A. "is in no danger of being denied any services to which [s]he is entitled by DOE under the [IHO Order]."  (ECF No. 51 at 4).  DOE points to the "plain language" of the IHO Order specifying the number of, and expiration date for, the tutoring hours in clear terms.  (Id. at 3–4).  The IHO Order, which "was a 'final determination on the merits and is res judicata for any future proceeding between the parties,'" contemplates that "additional remedies for the school years at issue[] . . . would be 'subsequently litigated.'"  (Id. at 3 (quoting ECF No. 48-1 at 24)).

DOE maintains that it did not fail to implement the IHO Order or authorize services for D.A., because tutoring services were automatically authorized by the date of the IHO Order.  (ECF

No. 51 at 2).  DOE notes that D.A. had been receiving tutoring services for four months before it issued the DOE Confirmation Email.  (Id. at 2–3) (citing ECF No. 48-4)).

Second, DOE argues Plaintiff cannot show a likelihood of success on the merits "for the same reason" that it cannot show irreparable harm, that is, because D.A. is not in danger of being denied services to which she was entitled under the IHO Order.   (ECF No. 51 at 4).

Third, DOE argues that an injunction would not serve the public interest, because "[t]he delays . . . are squarely with Plaintiff[], and any urgency or imminence in this case is of [her] own making."  (ECF No. 51 at 4).  DOE notes that D.A. "has only used a fraction of [the] 1,280 hours of tutoring services allocated in the [IHO Order]."  (Id. at 2).

### C.  <u>Preliminary Injunction</u>

The Court finds that Plaintiff has failed to demonstrate that the DOE did not fully implement the IHO Order, and therefore she cannot meet the standard for a preliminary injunction.  Accordingly, the Motion is denied.

### 1.   <u>Likelihood of Success on the Merits</u>

Courts have found a likelihood of success on the merits where defendants failed to implement a student's final IHO Order, <u>see</u> <u>A.T.</u>, 1998 WL 765371, at *11 (granting injunctive relief where the failure to implement the SRO order resulted in a failure "to comply with the IDEA's mandate that the state provide a [FAPE] to [plaintiff]").  Here, however, the evidence before the Court establishes that DOE has <u>not</u> failed to implement the IHO Order, and therefore Plaintiff cannot meet her burden of showing a likelihood of success on the merits.

The IHO Order was unequivocal that the tutoring hours were "to be drawn upon by the family at such times and in such locations as <u>they</u> deem practicable, and to be used <u>no later than</u>

August 31, 2021."  (ECF No. 48-1 at 23) (emphasis added).  The IHO Order thus made it <u>Plaintiff</u>'s obligation to determine when and where to draw on the bank of tutoring hours.  The Court finds that Plaintiff's delay in contacting DOE to initiate tutoring until November 2019—which her Affidavit does not explain—was the reason why tutoring did not commence until nearly six months after the IHO Order.  (ECF No. 48 ¶¶ 29–31).  The Vendor Invoices and the Kopp Declaration show that within twelve days of Plaintiff's counsel contacting DOE on November 6, 2019 to designate the preferred service provider, Kid Success began providing compensatory tutoring to D.A.  (ECF Nos. 48-8 at 1; 48 ¶¶ 30, 33; 48-7 at 5–6).  Accordingly, the evidence before the Court does not support that the DOE "severely delayed" providing tutoring services.  (ECF No. 47 at 5).

Moreover, the June 3 Email was <u>not</u> a prerequisite to D.A. receiving tutoring services, because Plaintiff's own documents in support of the Motion show that D.A. received 21 hours of tutoring from Kid Success in the preceding four months.  (ECF No. 48-8 at 1–6).  This undisputed fact supports DOE's assertion that the "administrative 'authorization' is not required for a student to begin receiving services from a vendor."  (ECF No. 52 ¶ 13).  Further, "[o]nce an invoice is received for services past the timeframe in the payment authorization e-mail, IHOIU automatically re-authorizes the case, moves the bank over, and pays the invoice."  (<u>Id.</u> ¶ 19).  Plaintiff offers no evidentiary support for her conclusory assertion that DOE "let" services for the month of May 2021 be "cut off," (ECF Nos. 48 ¶ 67; 48-2 ¶ 20), or that DOE deprived D.A. of tutoring in May 2021.

Because the DOE has not failed to implement the IHO Order, Plaintiff cannot establish a likelihood of success on the merits and is not entitled to a preliminary injunction  <u>See J.G. v. Mills</u>,

No. 04-CV-5415 (ARR) (SMG), 2006 WL 8066678, at *28–29 (E.D.N.Y. July 6, 2006) (denying preliminary injunction and finding no substantial likelihood of success on claim that defendants deprived plaintiffs of educational programming without due process, where circumstances beyond DOE's control caused their removal from schools); compare New York Univ., 2021 WL 1662532, at *8–10 (finding no likelihood of success on the merits by student challenging her suspension where review of the evidence suggested the university properly followed its policies in imposing suspension for violating COVID-19 safety protocols) with LIH ex rel. L.H. v. N.Y.C. Bd. of Educ., 103 F. Supp. 2d 658 (E.D.N.Y. 2000) (granting preliminary injunction preventing implementation of suspension policy for disabled students and finding that DOE's failure to follow required disciplinary procedures created a substantial  likelihood of irreparable injury).

The precedent on which Plaintiff relies is distinguishable.  In Y.S., (ECF No. 47 at 14, 16), it was undisputed that the DOE did deny an educational placement, and, as a result, the court found that DOE "failed to comply with the [IHO's] final order and has not shown any progress in complying with the order since this action was filed[,]" which led the court to "conclu[de] that DOE will not comply absent an order."  2021 WL 1164571, at *4.  Thus, the court found it "easy" to conclude plaintiff would succeed on her claim because DOE admitted that it had not complied with the final order.  Id.  By contrast, the Court has concluded here that DOE did not cause D.A. to be deprived of any tutoring hours.

Plaintiff's reliance on A.T. (ECF No. 47 at 14, 17) is similarly misplaced.  There, the court granted plaintiff's request for a preliminary injunction and directed the student's placement in a new environment.  1998 WL 765371, at *10–11.  The court found that plaintiff had established irreparable harm, and an actual and imminent injury, because she was denied a FAPE, denied

mandated occupational therapy, and continued to attend school in a setting "that has been found as a whole to be inappropriate." Id. at *10 (internal quotation marks omitted). The court determined this was a situation in which the "school districts ha[d] refused to implement" the IHO decision. Id. at n.16 (collecting cases where preliminary injunctions were granted for refusal to implement). Here, D.A. began receiving tutoring within a month of her counsel contacting the DOE to designate Kid Success as her service provider, and has not shown that the DOE was responsible for the seven months in which she did not receive tutoring.

Finally, SJB is both factually and procedurally distinct. (ECF No. 47 at 18). In SJB, which concerned a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) and (6), the court viewed plaintiff's allegations "in a favorable light, as [it] must," and concluded that DOE failed to implement an IHO ruling. 2004 WL 1586500, at *5. The record of noncompliance in SJB, which included an admission by DOE that it failed to provide a substantial portion of required services, stands in contrast to DOE's actions here. Id. at *1.

### 2. Irreparable Harm

Having found that there is not a likelihood of Plaintiff succeeding on the merits of her claim, the Court may deny the Motion without proceeding further in the preliminary injunction analysis. See New York Univ., 2021 WL 1662532, at *10 n.3. The Court will address this element, and, concludes, for similar reasons, Plaintiff cannot establish irreparable harm absent the injunction.

While the denial of an educational "placement to which a student is entitled is irreparable harm[,]" Y.S., 2021 WL 1164571, at *4 (collecting cases), Plaintiff fails to make this showing because the expiration of D.A.'s tutoring hours — on the deadline set forth in the IHO Order and

then briefly extended twice by mutually executed stipulations (ECF Nos. 48-1 at 23; 55; 68) —

does not amount to an "actual and imminent" injury.  A.T., 1998 WL 765371, at *10.

As analyzed supra at § III.C.I, the record on the Motion shows that DOE did not fail to

implement the IHO Order or cause a delay in tutoring, and therefore Plaintiff cannot attribute

seven months of non-use of tutoring hours to DOE.  Accordingly, she cannot demonstrate

irreparable harm.  See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Reidy, 477 F. Supp. 2d 472,

473–77 (D. Conn. 2007) (denying motion for temporary restraining order and preliminary

injunction, and finding no risk of irreparable harm, likelihood of success on the merits, or balance

of hardships tipping in its favor, where movant could not show breach of protocol by defendant);

Credit Suisse Secs. (USA) LLC v. Lee, No. 11 Civ. 8566 (RJH), 2011 WL 6153108, at *4 (S.D.N.Y.

Dec. 9, 2011) (citing Merrill Lynch and denying preliminary injunction application).

### 3.  Balance of the equities and public interest

The equities do not strongly favor Plaintiff, and an injunction is not in the public interest

because, as set forth above, Plaintiff cannot show that DOE failed to implement the IHO Order or

deprived D.A. of access to tutoring services through inaction  See Y.S., 2021 WL 1164571, at *5

("The public interest is always 'best served' by ensuring constitutional and civil rights are upheld

after a plaintiff has shown a likelihood of success on the merits.") (quoting Coronel v. Decker, 449

F. Supp. 3d 274, 287 (S.D.N.Y. 2020)).

The Court finds that the balance of the equities and public interest are in DOE's favor,

because there was no implementation failure here, so "[i]f the Court were to deny [Plaintiff's]

[M]otion . . . [Plaintiff] will merely be obliged to follow the procedure that [DOE] has set . . .

[Plaintiff] cannot fairly claim hardship from having to participate in this established process[.]

Peck, 987 F. Supp. 3d at 413 (denying preliminary injunction by medical resident to stop defendant from proceeding with committee review of her proposed discharge, and finding that defendant had in place a procedure for challenging adverse employment action).   The Court notes that "[t]here can be no real debate whether students who are erroneously deprived of the opportunity to receive an education will suffer irreparable harm." J.G., 2006 WL 8066678, at *5. There is a public interest in ensuring that students are not deprived of their right to receive an education.   But this interest is not jeopardized by leaving in place the process here, which DOE followed in implementing the IHO Order.   See Peck, 987 F. Supp. 3d at 414–15 (determining that the public interest would not be served by granting preliminary injunction, where absent the injunction the movant remained free to challenge her termination through a review process, but granting the injunction would oblige a hospital to employ a substandard employee).   That Plaintiff did not, or could not, schedule tutoring sessions for D.A. (see ECF No. 48-2 ¶ 15) does not represent a failure by the DOE to fulfill the objectives of the IDEA.

The preliminary injunction Plaintiff seeks "is an extraordinary remedy, sparingly imposed only when a party demonstrates a clear or substantial likelihood of success on the merits and irreparable injury[.]" J.G., 2006 WL 8066678, at *44.   Because Plaintiff cannot show that she would suffer an irreparable harm absent a preliminary injunction or a likelihood of success on the merits, a preliminary injunction is not appropriate.

### IV. CONCLUSION

For the reasons set forth above, the Motion is DENIED.   The parties are reminded that by **Thursday, October 7, 2021** they must file a joint letter of no more than three pages setting forth next steps in this action, including any remaining discovery and identifying any dispositive

motion(s) that the parties anticipate filing and providing a proposed briefing schedule.  (ECF No. 63).

The parties may jointly contact the Court if they believe that a further settlement conference would be productive.

Dated:          New York, New York
                September 30, 2021

                                    SO ORDERED.

                                    _____
                                    SARAH L. CAVE
                                    United States Magistrate Judge